**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC MOSLEY, | ) | CASE NO: 1:10-cv-1408 |
| | ) | |
| Plaintiff, | ) | JUDGE GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| MAGGIE BEIGHTLER, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the Magistrate Judge pursuant to Local Rule 72.2. Petitioner, Eric Mosley ("Mosley"), challenges the constitutionality of his conviction in the case of *State v. Mosley*, Case No. CR 500509 (Cuyahoga County 2007). Mosley filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 23, 2010 in the United States District Court for the Northern District of Ohio. For the reasons set forth below, Mosley's petition should be DENIED.

I

The state appellate court reviewing Mosley's claims on direct appeal found the following facts to be relevant to his case:

{¶ 2} On September 7, 2007, the Cuyahoga County Grand Jury indicted appellant on three counts: count one alleged domestic violence in violation of R.C.

2919.25(A) with two "furthermore" clauses for two prior domestic-violence convictions; count two alleged disrupting public service in violation of R.C. 2909.04(A)(1); and count three alleged kidnapping in violation of R.C. 2905.01(A)(2) and/or (A)(3).  Appellant pleaded not guilty to the charges in the indictment.

{¶ 3} The jury trial of this matter was held on November 11, 2007.  At trial, L.M. testified that on July 15, 2007, a verbal argument between appellant and her escalated into a physical altercation.  More specifically, while L.M. was ironing a shirt in her living room, appellant grabbed her by the shoulders, shook her, and put her up against a wall.  Consequently, L.M. dropped the iron she was holding and then tripped over the object.  Both L.M. and appellant then fell to the ground.

{¶ 4} While on the ground, appellant was on top of L.M. She struggled to get up but was unable.  She testified that the two were yelling at each other and she pleaded with him to free her from his hold.  He denied her requests, and instead, continued to hold her down.  Within seconds, L.M.'s mother and son pulled appellant from L.M.  As a result of the altercation, the hot iron hit L.M.'s leg and caused a burn.  She also suffered from a scratch on her hand.

{¶ 5} The son of L.M. and appellant ("the son") testified that he witnessed the incident that occurred on July 15, 2007.  He explained that L.M. and appellant were verbally arguing when appellant walked into the room where L.M. was located.  The son then heard appellant smack L.M.  The son next saw L.M. on the ground and appellant grabbing her.  L.M. was slapping appellant's hands out of the way and kicking.  She attempted to get up but appellant was keeping her down and grabbing her.  L.M. was screaming and yelling at appellant to get off her but appellant was not responding.  The son of L.M., therefore, attempted to grab appellant by the stomach and pull him off L.M.  The son further testified that he saw the burn mark on his mother as a result of this incident.

{¶ 6} Officer Stephen Pagano, a police officer with the Maple Heights Police Department, testified that both L.M. and her mother informed him that appellant had assaulted L.M.  Accordingly, he took a statement from L.M.  Officer Pagano testified that L.M.'s statement differed from her testimony.  In her statement, L.M. submitted that appellant choked her but when she testified at trial she denied any choking.

{¶ 7} Following the officer's testimony, the state concluded its case and offered various exhibits into evidence, including two journal entries documenting appellant's two previous convictions for domestic violence.  Appellant stipulated to the convictions, and the trial court admitted the exhibits into evidence.

{¶ 8} Thereafter, appellant moved for acquittal pursuant to Crim.R. 29(A).  The trial court denied his motion.  He then proceeded to rest his case and made

> another Crim.R. 29(A) motion.  The trial court again denied appellant's request and presented the case to the jury for deliberation.
>
> {¶ 9} The jury found appellant guilty of the domestic-violence and kidnapping charges as alleged in counts one and three of the indictment but found him not guilty of disrupting public service as charged in count two.
>
> {¶ 10} On November 8, 2007, the trial court sentenced appellant to one year of imprisonment for the domestic-violence conviction and three years for the kidnapping conviction.  The court ordered that the sentences run concurrent to each other, for a total three-year prison sentence.  Additionally, the court sentenced appellant to a mandatory five years of postrelease control.

*State v. Mosley*, 178 Ohio App. 3d 631, 633-34, 899 N.E.2d 1021, 1023-24 (2008).

Mosley timely filed an appeal to the state appellate court.  He asserted two assignments of error in his appeal:

> Assignment of Error No. 1:
>
>> The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of kidnapping.
>
> Assignment of Error No. 2:
>
>> The trial court erred by sentencing defendant on both the kidnapping and domestic violence charges where those charges were allied offenses of similar import.

On October 23, 2008, the state appellate court overruled Mosley's assignments of error and affirmed the judgment of the trial court.

Mosley timely appealed the state appellate court's decision to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Mosley asserted two propositions of law:

> Proposition of Law No. 1:
>
> "Restrain" for purposes of Ohio's kidnapping statute requires some substantial construction or limitation on the victim's movement.

> Proposition of Law No. 2:
>
> Kidnapping and domestic violence are allied offenses of similar import under the circumstances of this case where the kidnapping was incidental to the assault.

On March 25, 2009, the Ohio Supreme Court denied Mosley leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

Mosley filed in this court a petition for writ of habeas corpus on March 11, 2010. He raises four grounds for relief:

> **GROUND ONE**: There was insufficient evidence of restraint of the victim to sustain the offense of kidnapping.
>
> **GROUND TWO**: The defendant was convicted of two offenses that, under Ohio law, are allied offenses of similar import, in violation of federal due process and federal Double Jeopardy.

Respondent filed an Answer/Return of Writ on October 29, 2010.  Doc. No. 11.  Thus, the petition is ready for decision.

II

*A. Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Mosley. Mosley filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic

jurisdiction. This court has jurisdiction over Mosley's petition.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Mosley's claims involve legal issues which can be independently resolved without additional factual inquiry.

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

-5-

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Mosley has no state remedies available for his claim.  Because no state remedies remain available to him, Mosley has exhausted state remedies.

*D.    Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v.*

*Harless*,  459 U.S. 4 (1982).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent argues that Mosley has procedurally defaulted his second ground for relief, that his conviction for two allied offenses of similar import violated his rights to due process and his protections against double jeopardy.  Both in his state appellate brief and in his memorandum in support of jurisdiction to the Ohio Supreme Court, Mosley argued these claims exclusively as issues of state law.  He did not allege a constitutional violation, and he cited no federal cases which might have intimated that he had a federal claim.  Because Mosley failed fairly to raise this claim in the highest court in Ohio in a federal constitutional context, Moseley has procedurally defaulted this claim.

Mosley does not demonstrate cause and prejudice for his default or allege that enforcing the default would result in a fundamental miscarriage of justice. Mosley's procedural default, therefore, should not be excused. For these reasons, Mosley's second ground for relief, that his conviction for two allied offenses of similar import violated his rights to due process and his protections against double jeopardy, should be dismissed as procedurally defaulted.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and

-8-

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to . . .* clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of . . .* clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams,* 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano,* 237 F.3d 722, 729-31 (6th Cir. 2001). The court will examine Mosley's remaining ground for relief using the deferential standard applied to state court rulings on the petitioner's claims.

Mosley contends that there was insufficient evidence to support his conviction for kidnapping. Respondent denies this contention.

A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that after viewing the evidence in the light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Scott v.*

*Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000).  This is the standard whether the evidence against the petitioner is direct or circumstantial.  *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir. 1986).  It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Holland v. United States,* 348 U.S. 121, 140 (1954).

> The role of the reviewing court in considering such a claim is limited:
>
> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

The state appellate of court reviewing the corresponding claim on direct appeal found the following facts and reached the following conclusions of law in rendering its decision:

> [A]ppellant argues that the trial court erred in denying his motion for acquittal only as to the kidnapping charge because the state failed to present evidence establishing that appellant restrained L.M.'s liberty.  Viewing the evidence in a light most favorable to the state, we find that the state presented sufficient evidence of kidnapping.  The statute defining kidnapping, R.C. 2905.01, states:
>
> {¶ 16} "(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> {¶ 17} "(2) To facilitate the commission of any felony or flight thereafter;

{¶ 18} "(3) To terrorize, or to inflict serious physical harm on the victim or another."

{¶ 19} This court has previously defined the element of "restrain the liberty of the other person" to mean "to limit one's freedom of movement in any fashion for any period of time." *State v. Wingfield* (Mar. 7, 1996), Cuyahoga App. No. 69229, 1996 WL 100847; see also *State v. Walker* (Sept. 2, 1998), Medina App. No. 2750-M, 1998 WL 597881 (restraint of liberty does not require prolonged detainment); *State v. Messineo* (Jan. 6, 1993), Athens App. Nos. 1488 and 1493, 1993 WL 3520 (grabbing victim's arm and shaking her constituted restraint).

{¶ 20} "[Furthermore,] [a]n offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. * * * Rather, it depends on whether the restraint 'is such as to place the victim in the offender's power and beyond immediate help, even though temporarily.' * * * The restraint 'need not be actual confinement, but may be merely compelling the victim to stay where he is.' " *State v. Wilson* (Nov. 2, 2000), Franklin App. No. 99AP-1259, 2000 WL 1639621, quoting 1974 Committee Comment to R.C. 2905.01.

{¶ 21} In *State v. Swearingen* (Aug. 20, 2001), Clinton App. No. CA2001-01-005, 2001 WL 950671, the court found sufficient evidence establishing the element of restraint for an abduction conviction where the defendant briefly detained the victim. Id. In that case, the defendant grabbed the victim by her shoulders and sat her on the ground. Id. After the two sat next to each other for a few moments, the defendant pushed the victim back and pinned her to the ground by her wrists for about ten to 20 seconds before releasing her. Id. In finding that the evidence sufficiently established that the victim was restrained, the court reasoned that "[t]he fact that the restraint was brief, fifteen to twenty seconds at most, is immaterial, as even a momentary restraint may constitute an abduction." Id.

{¶ 22} Likewise, in the instant matter, we find the detention of L.M. sufficient to constitute a kidnapping. L.M. testified that she was ironing a shirt when appellant grabbed her shoulders and shook her. This jolting resulted in her dropping the hot iron and causing a burn to her leg. Additionally, the two fell to the ground. While on the ground, appellant got on top of L.M. and proceeded to grab and restrict her, thereby inhibiting her ability to get up. L.M. asked appellant to free her and even kicked and screamed to escape. Her pleas, however, were unanswered until her son and mother pulled appellant from L.M. Considering the foregoing, we find sufficient evidence establishing that appellant restrained the liberty of L.M. to facilitate the commission of domestic violence or to terrorize or inflict physical harm on L.M.

*Mosley*, 178 Ohio App. 3d at 635-36, 899 N.E.2d at 1024-25.

Mosley does not demonstrate, or even argue, that the state appellate court reached a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Mosley also does not demonstrate by clear and convincing evidence, or even argue, that the state appellate court's decision rested upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. As Mosley does not contradict the state appellate court's finding that there was sufficient evidence to support his conviction for kidnapping, Mosley does not demonstrate that he is entitled to habeas relief. For this reason, Mosley's first ground for relief, that there was insufficient evidence produced at trial to support his conviction for kidnapping, should be dismissed.

IV.

For the reasons given above, Mosley's petition should be DENIED.


Date: August 17, 2011              s/ *Nancy A. Vecchiarelli*
                                   United States Magistrate Judge

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**